## REBER v. BOND.

*(Circuit Court, S. D. Mississippi, E. D.  May 20, 1889.)*

CARRIERS OF PASSENGERS—INJURIES ON FREIGHT TRAINS.

It is the duty of the conductor and employés operating a freight train, as to which some accommodations have been provided for passengers, to give passengers thereon such attention and care as is consistent with the operation of the train, but not such strict attention and care as are required of the employés on regular passenger trains; and a person riding on such freight train, who is injured by the negligence of the employés, is not entitled to as heavy damages as if the accident had occurred on a passenger train.

Petition against Receiver on a Claim for Damages.

*Calhoun & Green,* for petitioner.

*Nugent & McWillie,* for respondent.

HILL, J. This petition was exhibited by petitioner in his life-time against F. S. Bond, receiver, in the case of *Farmers' Loan & Trust Co. v. Vicksburg & M. R. R. Co.,* and since his death revived in the name of his administrator, to recover damages for injuries received by him by the alleged gross carelessness and negligence of the employés of the said receiver. The answer of the receiver denies the carelessness and wrongful acts alleged. Proof has been taken on both sides, and the questions of fact, as well as law, submitted to the court. The undisputed facts are as follows: Dr. Reber, this petitioner, on the 23d day of August, 1888, purchased a ticket from the agent at Brandon to Jackson, and got aboard the freight train bound westward, and took his seat in what is called the "caboose car," which has in it cushioned seats for the accommodation of such passengers as might desire to travel by that train. When the train arrived in Jackson it passed the freight depot, and beyond Capitol street, stopping for a very short period with the caboose car at Capitol street, where one of the passengers got off the train, the others—some eight—remaining. The train was then backed down to the switch, towards the freight depot. When the caboose got opposite the depot, it stopped for a short time, when some one remarked that that was the place to get off. Dr. Reber, and all the other passengers desiring to get off the train, arose from their seats, and started to get out, when by a sudden jerk or jar the caboose was thrown back, which threw the passengers forward, who were on their feet, and Dr. Reber was

thrown violently down on the floor, causing injuries to different portions of his person, from which he suffered great bodily pain and suffering, rendering him helpless, and from which he afterwards died. The proof is conflicting and unsatisfactory as to the length of time the train was stopped at the crossing of Capitol street, the place where passengers usually disembarked from the caboose. That it did stop there a short time, and that one of the passengers, Mr. Jayne, did disembark there, is conceded. There is no proof, however, that the passengers were notified that that was the place for those to leave the train who desired to leave it at Jackson, which should have been done if they were required to leave at that point. Had that point been the regular passenger depot, such an announcement would not have been necessary, as the passengers would then know that they were in Jackson. The proof is equally conflicting and unsatisfactory as to whether the caboose was detached from the train when it arrived at the freight depot, and, if so, how long it remained before the defendant and others attempted to disembark, and the accident occurred resulting in the injuries to the petitioner. The testimony of the employés of the defendant is that the caboose was not detached until after the passengers had left the caboose, and that the jerk or jar of the train was the result of the slack running out of the train, as it is called, as is usual when the train is stopped at that point. The testimony of some of the witnesses for petitioner is that the caboose was detached from the train before that time. I am of the opinion that the weight of the evidence is that it was not detached until after the accident, and that the jar or jerk was the result of the slack running out of the train. There is also some conflict in the evidence as to whether or not any one connected with the train notified the passengers that that was the place to leave the caboose; that some one did is evident, and the weight of the evidence is that it was the conductor, as it was his duty to have done, if the train had come to a proper stop, and there was no danger in getting out of the caboose; and it is fair to be presumed that he was of the opinion that the proper stop had been made, and that it was safe for them to disembark, but in which he was mistaken. The proof is that the freight depot was one of the points for disembarkment from the train. I am of the opinion that it was the duty of the conductor, who, from the tickets he had taken up, knew that petitioner, with other old persons on the train, were aboard the train bound for Jackson, to have either stopped the caboose at the crossing of Capitol street long enough for them to get off safely, and to have given them timely notice that that was the place to leave the train, or, if this was not done, to have notified them to remain in their seats until the caboose was detached from the train, and when they could get off of it safely; and that there was such a failure upon his part as to amount to a degree of negligence. The question, however, is, did it amount to that degree of negligence as, under the statute, renders the defendant liable for the damages claimed. If it was gross negligence, then there is no question of the liability. If it was not gross negligence, and the train was one only designed for the transportation of freight, and not for the transportation

of passengers as well, then there is no liability. I am of the opinion that the proof does not show a case of gross negligence, so as to justify punitive damages, or damages at all, if the train had been one not designed to transport passengers as well as freight. It is certain that it was not a passenger train, or what is sometimes called a "mixed train," such as is used on short lines, and for the accommodation of local travel, and which have attached regular passenger coaches, and stop at the passenger depots; but the proof does show that more than ordinary accommodations were furnished to passengers than is ordinary or usual on strictly freight trains, and were such accommodations as to invite passengers to travel on that train who did not desire to wait for the passenger trains; and that, such being the case, it was the duty of the conductor and employés operating the train to give to passengers traveling on the train such attention and care as was consistent with the operation of such a train, but not such strict attention and care as that required of the employés on regular passenger trains. The passengers on this train, by going on it, instead of waiting for the regular passenger train, took all the risks incident to such a train, and were required to keep a lookout, and do everything reasonably within their power to avert accident and danger. The duties of the conductor and other employés operating the train are different from those on a passenger train. Freight trains are more difficult to manage and control than passenger trains, and consequently much more liable to accidents. The slacking and taking out the slack, the jars and jerks, are unavoidable in the one, and unknown almost in the other. Those who prefer traveling on freight trains take all these incidental risks; but, as before stated, I am of the opinion that by the extra accommodations furnished passengers, inviting them to travel in this caboose, a stricter obligation for attention and care to the passengers was imposed on the conductor and employés than would have been had they not been furnished and this invitation given, so that this exemption provided by the statute cannot avail the defendant. Yet I am further of the opinion that the damages should not be as much as for a similar degree of negligence had the accident occurred on a passenger train, and that all the circumstances should be taken into consideration. That the petitioner suffered great pain, and was disabled for life, and that the injuries hastened his death, are not denied. The question what, under all the circumstances, is a reasonable sum to be paid to his personal representative for the damages received, is one of some difficulty. If the injuries had occurred on a passenger train, where it is the special duty of the conductor and employés to receive passengers on the train, and to see them safely off the train, and when this special duty devolves upon the conductor, who has no other duty to perform, at that time, and who has at his command a competent brakeman to aid him, and when the train is easily handled, a much larger sum would be reasonable; but in the management of a freight train the conductor has other important duties to perform, and has very little time to devote to passengers, as is the case with all of his assistants. He has trains to make up, freight to receive and discharge; so that the risk which Dr. Re-

ber took in taking passage on this train, instead of waiting for the passenger train, must be taken into consideration. I am of the opinion that, considering all the circumstances, $2,750 is a reasonable sum to be allowed, and this sum to be in full for all damages resulting from the injuries received. The receiver will be ordered to pay that sum, and all the costs resulting from the injuries received, out of the money in his hands.